Your Honor, the first case of the morning is call 2090482 Callaghan v. Village of Clarendon Hills in Clarendon Hills Park District. On behalf of the Appalachians, Richard J. Schroeder. On behalf of the Appalachian for the village, Mr. Mark S. Mullins. On behalf of the Park District, Mr. Edward H. F. Dutton. Good morning, counsel. Mr. Schroeder. May it please the court. Mr. Dutton, Mr. Mullins. Again, good morning, Your Honors. My name is Richard Schroeder and I represent the plaintiff appellate in this case, Ms. Karen Callaghan. As Your Honors are aware, this case is about the defendant, Villages and Park Districts, knowing and willful creation of an unnatural, unreasonable, and excessive amount of ice and snow on village-owned property on a residential sidewalk located within the Village of Clarendon Hills. And this appeal is about the defendant's failure to take responsibility and their attempts to cloak themselves in the immunity afforded pursuant to Section 3-106 of the Tort Immunity Act. Throughout the course of this litigation, the defendants have attempted to use Section 3-106 of the Act as a sword to cut off all responsibility and liability for the hazardous snowy condition that they knowingly created, as opposed to the Act's intended purpose to be used as a shield to afford government bodies limited liability in certain applicable and intended cases that revolve around recreational immunity. Your Honors, this is not one of those cases. Throughout the course of this argument, I'm going to try to argue three primary points. Number one, Section 3-106 of the Tort Immunity Act does not apply to the facts of this case based on an evaluation of the subject property's character. Number two, Section 3-106 of the Tort Immunity Act does not apply to this case because an unnatural accumulation of ice and snow is not a condition of the property itself that would warrant application of that statute. And finally, number three, and I'll argue this only briefly, assuming argument of this Court does find that the Tort Immunity Act does apply, that the plaintiff's allegations in her Third Amendment complaint sufficiently stated a viable cause of action for willful and wanton misconduct, and the trial court improperly invaded the province of the jury when he decided as a matter of law that those allegations were insufficient. Well, Counsel, what is there about the character of the property then that would lead you to believe that 106 does not apply? Judge, if you look at the property itself, this parcel of property was located on a parcel of property owned by the village, not owned or leased by the Park District. And when you actually look at the character, if you look at the photographs that were submitted to the lower courts and were provided in this common law record, you'll see that it doesn't have swings, park benches, recreational facilities. So you say it has to be a park? Absolutely not. The property has to be a recreational facility like a park? Judge, when you look at the property itself and you evaluate the character, it has a fenced-in water tower facility that specifically was excluded from the defendant's own relied-upon and submitted intergovernmental agreement when they created this park. If you look at the relevant provisions in that agreement, you'll see that the provisions state the park includes lot 7 through 14. Okay, but not lot 15, which is what we're concerned with here. Was that sidewalk created at a different time than the sidewalks on lot 7 through 14? Well, Judge, that's unclear because we have been afforded no discovery in this case. We haven't even been allowed to have one interrogatory answer. All we know is that it was specifically excluded from the development of this park. Well, how can you say, then, the character is different than the sidewalks in 7 through 14? You're saying it depends on the ownership of the property? That's certainly one of the – I believe it does depend on that. And do you have any authority, case law authority, that talks about ownership as being a factor that should be considered by the court? Judge, at this time, I don't have any authority as to that effect, but if you look at every single case that's cited by the park district and the village, you'll see that all of the cases cited by them deal with property that was either owned or leased by either a park district or school property or some sort of village, and that the recreational use of that property actually – it was intended and permitted for recreational use pursuant to the statute. Okay. Now, was the sidewalk in Sylvester created for recreational use? Absolutely, Your Honor. As the Supreme Court did find, it was an integral part of the Soldier Field facility. It serviced only Soldier Fields. And was that the outcome-determinative issue, or wasn't it that it increased the usefulness of the recreational property? That's exactly right. But as the court – And that's a different factor, isn't it? But, Your Honor, as subsequent courts have analyzed Sylvester and distinguished Sylvester, specifically Batson, a case I referred to out of the Fifth District, as well as Rex Road, those courts stated that the increased usefulness factor is not outcome-determinative, and because logic would not allow for that, because it could cause absurd results that were never intended or foreseen by the legislature when they created this section of the Tort Immunity Act. But here we don't have to go that far. That sidewalk was right adjacent to the park, was it not? It wasn't a block away, a mile away. It was adjacent to the park and ran along the perimeter of the park like the sidewalks in Lots 7 through 14, correct? And it also ran along – Is that correct? That is correct, Your Honor. And it also ran along the perimeter going up Richmond Avenue on Lot 15 all the way along the stretch of residential homes. And if you look at Rex Road, a Supreme Court case that came down after Sylvester, they stated that that parking lot also did increase the usefulness of the football field that this boy was walking across to get a football helmet. However, what the defendants are trying to argue, as the defendants did in Rex Road, is that simply because it increases the usefulness of the park that this Tort Immunity Act is not applying. Rex Road said that's not true. It could be merely incidental that it does increase the usefulness of the football field, but it also increases the usefulness of other aspects of the school property. And that's the same as the sidewalk in this case. It not only increases the usefulness of the park, but it's incidental to its primary use as a walkway for village residents. It also increases the usefulness for the water tower facility that's located directly on Lot 15, a property that's owned by the village, not the park district. It also increases the usefulness of the homes that are located in our pictures that are located right next to Lot 15. So it has a dual use, is that correct? It has many uses, but the primary use is a use for village residents to walk on. And who has, where do you get that conclusion, that the primary use is for the village residents to walk on, as opposed, well, let's assume that that's correct, but if it also increases the usefulness of the park, then doesn't that define the character of the property as well? No, Judge, because as I mentioned in Batson as well as Rexroth, that increased usefulness factor is not outcome determinative, but more so it could be merely incidental. I'm not sitting here and arguing before this Court that it does not incidentally also increase the usefulness of the park. It's right next to the park. Obviously, this sidewalk or any other sidewalk that a traveler uses to come onto the park's property would increase the usefulness of that. But that's not what the legislature intended when they created this portion of the Act, not to have some kind of unbounded immunity for government entities to clump themselves in immunity, whether or not the property was recreational or not. Counselor, may I ask a question? What difference does it make whether it's Lot 15 and Lot 14 and 13 and 12 or whatever? Is there any difference at all? Absolutely, Judge. The primary difference is, number one, it's property that specifically was excluded by the park district as well as the village when they created and developed this park. And why that's important is when you look at the Supreme Court's ruling in Sylvester, they found that that parking lot serviced only Soldier Field, that that parking lot was an integral part of Soldier Field, owned by the park district. And furthermore, that the parking abutment, the car stop, was actually a fixed condition of the property. So because these defendants, when they created this park, specifically excluded Lot 15, they did so for a primary reason, because they knew that the property on Lot 15 was not recreational in nature. And as I alluded to before, that lot only contains... or was reckless disregard of getting included. Judge, I can't say that for certainty. Certainly they could have negligently or recklessly failed to include it. But what we do know is, because I certainly don't have any discovery to support the fact of why it was excluded or not, but it certainly appears when you look at the entire agreement, they talk about the water tower facility and that it's a restricted area and it has warning signs on the fence saying, stop, you need to get permission. Not permission from the park district or park district employees, but you need to get permission from the village to even gain access to that property. And, Your Honor, the reason, and I think it's a reasonable assumption, why that property was excluded... You said something to the judge. You said that you need permission from the village in order to gain access to the property. That's correct. In other words, you need to get permission from the village to walk across it? No, Judge, excuse me if I was unclear. On lot 15, just mere feet away from where my client was injured and slipped upon this unnatural accumulation of ice and snow, there is a fence with a water tower facility, and I'll quote the warning signs on that fence. It says, stop, warning, restricted area, get permission before entering for access, contact, Clarendon Hills Public Works. Okay, but that fence is a boundary line. Beyond the fence towards the water tower, no one is to go, correct? Is that what that means? That's correct, Your Honor. It doesn't apply to the sidewalk in front of the fence, does it? I mean, obviously that would be an absurd conclusion, that nobody should walk on the sidewalk. But, Your Honor, what I'm arguing is I believe that's reasonable as to why lot 15 was specifically excluded. And why is that? I'm not following the logic of the argument. Because the property on lot 15 was located on a parcel of property that was not intended or permitted for recreational use. It's borne out by the fact of this warning sign saying, hey, when you come on lot 15, you actually have to have the village do it, because it has a dangerous water tower facility that has a fence. And the sidewalk was mere feet away from that facility. The Park District maintains that sidewalk, does it not, like it does the rest of the sidewalks 7 through 14? Your Honor, simply because the Park District, in an affidavit by John Hayes, states that they maintain the sidewalk. And I think they only say they maintain the grass on the area. They don't say they maintain the sidewalk. But what they say, and what John Hayes says in his affidavit, is they voluntarily assumed this duty that they never were supposed to do. This wasn't park property. It wasn't leased park property. It was specifically excluded from that agreement. And simply because another entity voluntarily goes on the land and maintains it doesn't necessarily mean that it should be recreational property. That would almost be, that can certainly cause absurd results. For example, if I was a neighbor that went on my neighbor's property and did the same sort of thing, and shoveled up a bunch of snow, and then all of a sudden my neighbor would be responsible for that. You indicated that you thought the trial court usurped the privilege or the duty of the jury to determine that this was property subject to property entity. Would you elaborate as to why you believe that the trial court was wrong in making its determination that it was under the act? I certainly will, Judge. When you look at the trial court's ruling on September 24th of 2008, Judge Richard Stock specifically tells us when a sidewalk is located on park district property and lies in the immediate vicinity of a recreational facility, then the act applies for single-till silvester. Now, there's two crucial errors in his analysis that led to his ruling. As I mentioned previously, number one, this sidewalk was not on park district property. It was on village-owned property. That's undisputed. That was just an erroneous statement by the trial court. But also, number two, he mentioned that it lies in the immediate vicinity of a recreational facility. Now, that's true that there is a nearby park. But the only facility that was located anywhere near the sidewalk was the aforementioned water tower facility that contained the fence, that contained the warning sign, saying it's a restricted area. It seems like your argument strikes me as being parallel or consistent with the argument that if there's a sidewalk along a swimming pool and there's a fence on the swimming pool and there's a sign on the fence saying, you know, access limited to those people who would be either paid or residents with tags on their swimsuits, that that sidewalk along that portion of the swimming pool where there's a fence is not recreational, whereas in front of the facility where there is no fence because there's a building and a doorway or an entranceway, that would be deemed to be recreational because there's no sign or no fence. Judge, in response, I'd like to direct the court to the first district case of Johnson v. the City of Chicago where a plaintiff was walking right outside the premises on a sidewalk of a library and was injured. In that case, the trial court clearly stated that the sidewalk was located outside of the recreational property and therefore the Tort Immunity Act doesn't apply. And that case is very analogous to this case. This property clearly was located not within a park, not within a recreational area. It never was intended on becoming an integral part of the park, and you know that because it wasn't included in the intergovernmental agreement. You also know that pursuant to John Hay's supplemental affidavit. You also know that this was never permitted to be used for recreational use based on the warning signs located on that property on lot 15. If lot 15 was supposed to be part of the park, it would have been part of the park when they developed the park pursuant to the intergovernmental agreement. And that's the only document we have to go on in this case. Does the Water Tower facility take the entire lot 15? Your Honor, I don't know the exact dimensions of the facility. I know it's a big portion of that lot, and I know lot 15 then, well, obviously up next to lot 14, but lot 15 also is adjacent to a bunch of residential homes, and the sidewalk on lot 15 also services those residential homes. And then this area that initially you said really isn't a recreational area, but now you're calling it a park, I suppose, for lack of a better term, is an open area where people can walk in, correct, or picnic or play volleyball or do whatever they want to even though there are no swings or slides or sandboxes. That's correct, and my understanding of the area, Your Honor, is basically that it is just an open park, and I believe there's a hill for sliding. And so if we're playing and the ball goes over into lot 15, we can't go get the ball? Certainly not. I think that would be absolutely ludicrous. I hope I'm not arguing that. Well, I mean, if you take your argument to its logical, that's exactly what I think you're arguing. This is not part of the park, but it is certainly there in that vicinity, and there is access to that for recreational purposes if only to retrieve your astray kickball. So why is this so monumental that it's been excluded when it's right there? Because I'll quote the holding from Rex Rowe, and hopefully this will at least shed light on your question. If we were to accept the defendant's argument, and this is the court speaking, we would be effectively immunizing large amounts of otherwise nonrecreational property simply because it's located near recreational property. And that's why it's so important. This wasn't located within property. It was never part of the recreational property. But now all of a sudden it's the defendant's who wants to effectively immunize a water tower facility on lot 15 and all the property that is directly located right next to it. Just because it's near recreational property or near a recreational facility does not mean that it should be immunized pursuant to Section 3-106 of the Act. It certainly does not mean that a village resident who was walking down the sidewalk couldn't walk down lot 7-14 and lot 15, no matter what the purpose or intent of that village resident was. Is there a case that defines the difference between near and next to in terms of this situation and Rex Rowe? Well, Judge, Rex Rowe is a very valid situation because at Rex Rowe you have the parking lot that is immediately next to the football field, but it's also immediately next to the school. So in that case you have it being next to, directly next to that football field. So I think in the Supreme Court in that case they found that although the parking lot was right next to the Soldier Field, or it's not Soldier Field, but the high school. Libertyville or something? I think so. I think that that was exactly right next to it, just like we have in this case. Right next to the park, not within the park, not part of the park, never intended on being used for recreational use. And you have to look at the clear language of the statute. I'm going to stop you now since we're over the time, but you will have some additional time in rebuttal. Thank you. I think it's five minutes, Your Honor. Thank you. Good morning. May it please the Court, good morning, Your Honors. Again, my name is Mark Smolens and I represent the village of Clarendon Hills. Let me respond to a couple of questions that were posed to counsel for the appellant. The sidewalk was created at the same time. It was created when the village and the park district got together and decided to turn the Park Avenue detention basin into the Park Avenue Park. And we know this from the affidavit testimony of Mr. Hayes, the public works director, who was there in 2001 and 2002 when the park was created. In fact, he'd been with the village since 1988. And it's interesting that in the appellant's appendix to their brief, they give you both the original affidavit and then the supplemental affidavit, which was created when the appellant submitted some new quote-unquote factual material in response to one of the motions to dismiss. And Mr. Hayes' second affidavit provided amplification of his prior affidavit testimony. But one of the exhibits that is attached to Hayes' second affidavit doesn't appear in the appendix. I believe, and I don't have the record, I didn't have access last night, but I think it's going to be at page 331 of the common law record. And it talks about, on the map, Park Avenue Basin. And if you look at that map, you don't see a distinction between lots 7 through 14 and lot 15 because what their plaintiff is asking you to do here is to find that these 7 through 14 is recreational, but the next stretch in front of lot 15 isn't recreational because of some magical mystery. This no longer increases the utility of the park, of people accessing the park. But the point is the sidewalk wasn't there, Your Honors, before they built the park. Now, if we look at what the plaintiff's issue presented before this court, issue number one, whether the trial court erred when it dismissed counts one and three of the plaintiff's second amended complaint, those are the negligence counts, finding section 3106 of the tort media barred plaintiff's negligence claims even though the plaintiff was injured on property owned by the village of Clarendon Hills that was not used for, quote, recreational, close quote, purposes. That's the argument that the plaintiff made in another case that's been addressed at some length in the briefs, in Sylvester. That's what the first district appellate court said. This sidewalk, this entrance to this parking lot where someone had moved a concrete stop block and blocked the walkway was not traditionally used for recreational purposes, and what did our Supreme Court say? No, that's too limited. Section 3106 was designed and amended in 1986 so that municipalities will be encouraged to create what Clarendon Hills and the park district created here, the Park Avenue Park, and one of the things they did... If I may ask a question? Absolutely. Does lot 15 contain anything other than a fenced-in area that encircles a water tower? It contains grass, it contains the upslope to the sledding hill. Lots 14 and 15, that's where the sledding hill is. So if you want to walk up... Apparently, if you're going to be a mute, you have to walk along the sidewalk on the nonrecreational sidewalk to get past the magic point where lot 14 starts, and then you walk up the hill if you want to take your child down this sledding hill with your little plastic sled. It's obviously an absurd argument, but that, Your Honor, that's the gist of what the plaintiff is saying here. Let me also address something he said about not being permitted to conduct discovery. The Supreme Court rules provide a specific avenue that lawyers can use if they believe that in responding to a dispositive motion, either a summary judgment motion or, as here, a 2619 motion, that they have an avenue. They can submit an affidavit pursuant to Supreme Court Rule 191B and say, Wait a minute, Judge Stock. I need answers to interrogatories. I need police reports so that we can see whether or not there were 30 other people that slipped and fell and were injured on this sidewalk and that the village and the park district knew about it and they were willful and won. We need to take the deposition of this affiant John Hayes who submitted two affidavits because we don't believe that what he says is true in this affidavit. Now, weren't these affidavits inconsistent, though? Absolutely not, Your Honor. How were they not inconsistent? They're not inconsistent, Your Honor. If you look at the entire affidavit, the first affidavit from Mr. Hayes says, in paragraph 4, The improvements to develop the detention area into a park, now known as Park Avenue Park, were made in 2002. The improvements included, but were not limited to, the installation of sidewalks, including the sidewalk at issue in this matter, which is located in Park Avenue Park. Now let's go to the second affidavit. Paragraph 5. The area of the Park Avenue Park is reflected on Section 5 of Exhibit 1 and is known as the Park Avenue Basin. That's the map that I talked about earlier. In addition to the recreational portion of the park itself, there's a municipally owned water tower located in the westernmost portion of the former detention basin. Paragraph 10. The improvements which were laid in place with the development of the Park Avenue Park included, inter alia, clearly I drafted the affidavit for him, areas for public parking, along with the installation of sidewalks, all of which were located on the south side of Park Avenue and which included the sidewalk at issue in this matter. Now the reason that Paragraph 12 talks about Lot 15 not being in the intergovernmental agreement was because Mr. Haynes noticed that when we went back through it. And he said, wait a minute, I don't want to get in trouble with somebody saying Lot 15 was included in the intergovernmental agreement. So he and I worked out this Paragraph 12, but the affidavits are not inconsistent and your honors and Judge Stock have only this evidence with which to make your determination in this case as to the character of the property. And you don't have a hundred foot or however long stretch of sidewalk and say, well, but this last 15 feet. That doesn't, that didn't qualify for recreational immunity. Only the other 85 feet that's not in Lot 7 through 14. Well, how do you respond to counsel's argument that in each of the other cases you cited, the property was within the recreational property? Well, it's interesting he says that because the Supreme Court in Sylvester specifically said no. The plaintiff in Sylvester, the defendant in Sylvester, the park district, in their reply brief in the first district appellate court, asked the court to take judicial notice of the fact that the parking lot and the walkway were located within Burnham Park. And the Supreme Court, when asked about that, said no. It's too late. You had a trial. You didn't raise that. Here, we raised it. We raised it with competent evidence that they didn't bother to try and contravert. So for them to now say all these other cases, it's in the park, that's not true. There's no evidence of that in Sylvester. That the sidewalk was located inside the park. The court specifically said, we're not going to consider your request for taking judicial notice. Yet they nonetheless said the character of that particular sidewalk increases the recreational utility of Soldier Field. I heard the time, Your Honors. All right, co-counsel can take five minutes. Thank you. Good morning. Good morning.  Good morning. Good morning. Good morning. Go ahead. You need to jump in closer to the microphone, though, so that we can have... There you are. Okay. Let's start with the last issue, and that was within a park versus outside of a park. As Mr. Smollins correctly pointed out, the Supreme Court specifically makes that distinction and applies 3106 in the Sylvester case, even though the walkway was outside of Soldier Field. Not only by the park district, but outside of it significantly. And actually, I have pulled that out to highlight. The Supreme Court said this. The plaintiff is not alleged and the record does not reveal whether plaintiff's fall occurred within the confines of a park. Evidence was introduced, however, to show that the Burnham Park Maintenance Department cleans the south lot after events occurring in Soldier Field. That is directly analogous here. The undisputed affidavit testimony, I know plaintiff's counsel said there is no evidence and we don't know if the park district maintains the sidewalk. That's not correct. The undisputed affidavit testimony from Mr. Hayes is the park district both cuts the grass in Lot 15 and maintains the sidewalk along its entire length. Lot 7 through 14 and Lot 15, they make no distinction. Second reason why plaintiff's argument at that point, inside versus outside, is not applicable, doesn't hold water, this court's own decision in Dinelli applied 3106 across a public roadway owned by the state, Route 176. You've got bike path on both sides. The plaintiff is struck crossing the public roadway and the court has no problem and correctly applies 3106 even though it's outside of the bike path. If you take a look at Dinelli, which was approved by this court in Kaiser and adopted by the Supreme Court in Sylvester and in Butler, there it's at the entrance to an underground tunnel nowhere in the recreational facility and yet the Seventh Circuit Court of Appeals applies 3106 and the Supreme Court approves that. The argument of inside versus outside, I can understand when the plaintiff talks about Batson and Capps and they raise the issue, well, the Supreme Court in Sylvester couldn't have meant what they said, which is really what the court in Fifth District in Capps and Batson says, because you could extend that to an illogical conclusion. You could start applying 3106 to a sidewalk across the village. True, if that case comes up, I don't think you'll see somebody raising 3106, but that's not the case here. As the court has correctly pointed out, the only evidence before the court, the sidewalk was developed at the same time as part of the development of the park. That's actually a good thing. Governmental entities, pursuant to the Intergovernmental Cooperation Act, are supposed to combine their resources and work together jointly. That's what they did here. They took a detention area and they turned it into a recreational area. What is the benefit of doing that for the public? You take something that would otherwise be an eyesore and you turn it into a recreational use area. Tremendous. What did the Park District and the village get for their labor and expense of doing that? 3106, the legislature says, you'll be immune from negligence liability for doing that. Counsel, let me talk for just a minute, since I think I have some questions for counsel on willful and wanton and those allegations. So let me ask you a question. Why isn't it sufficient to allege the creation of a large, unnatural pile of snow and ice on a sidewalk that you argue was intended to provide access to the park, and why doesn't that demonstrate willful and wanton negligence? Happy to cover that, Your Honor, for several reasons. One is, I almost have a question back for the court, and that is, how would that ever differ from negligence? I'm sorry, I said negligence. I meant conduct, willful and wanton conduct. I understand your question. That's exactly what you said, Your Honor, and my question back is, if that created willful and wanton, how would that differ? How would willful and wanton differ from negligence? More importantly, every one of us, I would venture, has at some point in our lives shoveled a sidewalk and piled the snow partly on the sidewalk and partly next to it. And at the time, I bet we didn't think we were committing willful and wanton conduct, but that's what the plaintiff's argument is here. We also have a number of cases where much more significant and severe failure, either creation of defect, the Foley case where you have the village actually creating the ruts on the field of play, or you have failure to repair. We have Pomeroy, for example, where they not only have a known defect, this pile of loose and broken asphalt, 51 yards, one yard past the finish line, but they direct the fifth grader to run full speed towards it, and that's not willful and wanton. Or Burlingame, where you have three prior injuries along the same stretch of sidewalk and a three-inch height differential. You have three affidavits from prior injury parties, and you have an expert's affidavit that says this is a defect, and the court says even those facts aren't sufficient. If that's not, this isn't even close. And in fact, as I pointed out in my brief, I find it really difficult to get my hands around the idea that the park district, according to plaintiff's own allegations, voluntarily goes out and clears the sidewalk, even though the plaintiff says they have no obligation to do that. How the act of clearing the sidewalk, it takes no off of it, could ever rise to the level of willful and wanton absolutely stuns me. I can't understand how anyone could look at that as being either a wrongful act, much less to the level of willful and wanton conduct. For those reasons, I don't think this could ever rise to that. One final point with regard to Stein, because plaintiff mentioned he was going to get to that. I've pointed out in the brief, and I won't repeat all of the arguments there. Stein, as far as I'm concerned, is an outlier. I can't ever line Stein up with any of the other reported decisions of the courts. The main reason why, in Sylvester, we have a moveable car stop. There's no question. There's all kinds of prior testimony. This 100-pound car stop was somehow moved onto the sidewalk. In Kaiser, this court applies 3106 to a chair which was propped against the exit to the community center. How can Stein be correct in those cases be correct? I can't line those up. I also note that plaintiff's own allegations here, it sort of sets Stein aside. Plaintiff's own allegations here are all about a condition of property. That's what this case is about. That phrase appears throughout his Third Amendment complaint. If he's arguing it's a condition of property, but then he's arguing before this Court that it's not a condition of property, it doesn't match up with his allegations. For those reasons, I don't think Stein is going to be where this Court is going to go. Unless the Court has any further questions. Thank you, counsel. Thank you very much. Mr. Schroeder? I'll pick off where Mr. Dutton left off with Stein, which was my second argument. How is the ice and snow like the watering hose in Stein? Because near was a fixed condition of the property itself pursuant to Section 3-106 of the Act. So you say it has to be affixed to the land itself to be a condition that comes within the meaning of the statute? I think it has to be a permanent structure within the land, correct. For example, if you look at all the cases cited by counsel, he mentioned a rut in a field, a drainage ditch, a slide. All of these things were permanent structures. Even in Sylvester, we talk about the car stop. We're talking about a 100-pound car stop that was supposed to be a permanent structure as part of the concrete, as part of that parking lot. In this case, we have a pile of ice and snow that was moved from some other area and then dumped and plowed next to and onto this residential sidewalk. Similar to how a hose can be movable. It's not a fixed condition, and that's exactly what the 1st District in Stein stated. It stated that Section 3-106 was inapplicable because the hose was not affixed to the property and thus was not a condition of Grant Park. And keep in mind, in that case, the injury actually occurred within Grant Park. There's no question about that. Well, then how do you explain Kaiser and the chair? I mean, how do you reconcile the cases, or can't you reconcile them, as Mr. Dutton said? It is quite possible that some of those cases cannot be reconciled. If you look to Kaiser, in Kaiser, what you have is you have a case where the plaintiff was actually injured when she was exiting a community center. That this district found immunity because the building was used for recreational activities. For example, picnics, bake sales, concerts, meetings, receptions, festivals, such as the one the plaintiff was attending, and book sales. They found unquestionably that community convention center was for recreational use. And that's where the injury occurred. Again, and I can't stress it enough, our injury deals with a piece of property that was not within Park Avenue Park. So our argument was never intended on being part of the park, pursuant to the exclusion in the Intergovernmental Agreement, and certainly was not a parcel of property that was permitted for recreational use. Now I want to get back to something Mr. Small said in the initial argument, which was that in 1986 this immunity was amended, and it was supposed to lead to the expansion of this immunity. If it was never intended that way, then why is the park district tending it, as opposed to the village? If this is supposedly something outside the realm of any agreements relating to the park, then it would seem to me that there would have to be a separate exclusionary or an exclusive agreement between the parties that we're going to take Lot 15 and we're going to deal with it in a different way than we dealt in the others. So is there any reference to any communications or meetings or written or oral agreements between the parties? Judge, if you look in the Intergovernmental Agreement, there certainly are aspects of not only Lot 15, but also actually aspects of the park that state the village is solely responsible for the maintenance of that property. The water tower facility certainly was one of them. So they did make distinctions because, and even in the other Intergovernmental Agreement they state, it's not for recreational use. That's why it was excluded from the agreement itself. It says, you know what, village, there's some aspects of this property around this area that you must attend to and you must maintain because it's simply not recreational in nature. And they refer to a storm detention water system and the water tower facility located on Lot 15. The subject property character, when you evaluate its character, is not intended nor was it permitted for recreational use. Counsel, let's talk about willful and wanton for a couple minutes. In your brief, you rely on, excuse me, Muehlman and Benhart in support of your contention that the allegations in the Third Amendment complaint are sufficient or sufficiently stated a cause of action for willful and wanton conduct. How does the conduct here rise to the level of that in Muehlman where the defendant there knew of this dangerous condition, that is the uncovered pipes in Grant Park that were sprayed orange and different from the others, or the conduct in Benhart where actually the skid or non-skid strips were removed? How is this similar to either one of those cases? Well, for example, Your Honor, Benhart, and not the owner of the pool, affirmatively made an act and knowingly removed the non-slip strips from a slippery wave pool where he knew that people could slip and injure themselves. That's exactly what we have here. Unlike almost every single case cited by both the defendant, village, and park district, what we have here is an affirmative act, an actual creation, and that's what our allegations state. The affirmative act being the removal of the snow? The plowing of the snow. Correct. Do you understand my answer, Your Honor? And if you like, I know my time is up. Well, just finish the answer, please. Sure. It's similar to Benhart because of the affirmative causation of the condition. The affirmative act in Benhart was the pool owner actually removing a non-slip strip. A safety device. Absolutely. Removing that safety device. So here, what's the analogy? How do you say they're similar? I guess I'm saying they're similar because it's another affirmative act as opposed to a mere failure to repair or a mere failure to warm or put up signs. In this case, we have another affirmative act of actually not just allowing— Just removing the snow is the affirmative act? Well, not just removing the snow, Your Honor. It's removing the snow and then placing it on an area where they're not even supposed to be placing it pursuant to Section 6F of their own intergovernmental agreement, but actually placing that snow on a heavily traveled sidewalk that they now admit was part of a recreational area. And it's the affirmative act which makes the difference. From every single case they cite, all those cases talk about omissions to act, and that doesn't rise to willful and wanton misconduct. But in this case, we have the affirmative act in violation of their own agreement of placing an enormous amount of ice and snow, which is depicted in the pictures, in the worst possible area ever, which is on a sidewalk. Thank you, Counsel. Thank you. If Your Honor has had no other questions? Okay. Thank you very much, Counsel. At this time, the Court will take the matter under advisory.